Milligan, J.,
delivered the opinion of the Court.
At the general election for County and District officers, held on the 1st Saturday of March, .1866, for the *36 County of Obion, the plaintiff, E. A. McCraw, was elected Revenue Collector. At the April Term, which was the “first County Court,” held for Obion County, after his election, he presented his certificate of election, with his oficial bond, and asked to be inducted into office. The County Court refused the application; and, as it seems, postponed the final consideration of the case, until the May Term of the Court, thereafter. At this term, the cause was heard, and the application again refused, on the ground that the election was null and void. Brom this decision, the plaintiff appealed to the Circuit Court of the County, East of Reelfoot Lake, at Troy, when the cause was heard, and the judgment of the County Court affirmed; from which an appeal is prosecuted to this Court.
The facts are agreed, and substantially as follows: The acting Sheriff, on application of the Coroner, informed the latter, that he would not hold the election, or have any thing to do with it — he had held one election, and got into difficulties, and the next election he held, he would have authority from the Governor; and, besides, he would be a candidate in his district for Constable, if Mr. Nash was not a candidate for that office. Nash was not a candidate, and after the polls were opened on the day of election, the Sheriff announced himself a candidate, and received votes for the office of Constable.
After this conversation between the Coroner and Sheriff, the latter took the steps necessary to open and hold the election. He gave the proper and usual notices of election, which were posted up throughout the County— appointed deputies, etc.
*37 It farther appears, that some time before the day of election, the Coroner assisted in making out a ticket for County offices, upon which his own name appeared as a candidate for County Trustee. This ticket was printed, and distributed in the County. But a day or two before the election, he publicly announced from the Judge’s bench, during the session of the Circuit Court for Obion County, that he was not a candidate for any office, and would accept none. He made similar declarations afterwards, in private conversation.
It also appears, that in some of the districts, the deputies, or officers holding the election, were candidates for Justice of the Peace. Some of them were elected, and others defeated. The oath prescribed in the Act of 1865, chap. 16, sec. 7, was not, in every instance, administered to the judges and clerks of the election; but where it was omitted, the officers of the election were otherwise sworn, under the provisions of the Code, sec. 844. In those districts, it seems not to have been known, that a different oath had been prescribed, and they acted under the law as they believed it to exist.
In the 10th District, no election appears to have been holden. The deputy, or officer assigned to open and hold the election in that district, went on the ground, and only five or six persons attended, all of whom declined to act as officers of the election, and soon thereafter left the ground.
Prior to the election, the plaintiff took the oath, by the Act of 1865, chap. 16, sec. 7, required of candidates for office; and he is admitted to have received a majority of the votes. The Coroner, in person, held the election *38 in one district, and no person in the County, was allowed to vote, unles he first produced his certificate of registration as a voter, except three or four, who had lost or mislaid their certificates. The election was orderly and quiet throughout the County, and conducted in a spirit of fairness. The returns of the election, were made to the Court-house; hut the County Court being in session, the polls were compared in a private house in the County town. No exceptions were taken to the Coroner’s certificate of the election, or objection offered to the sufficiency of the plaintiff’s bond, tendered to the County Court.
Under this state of facts, various objections are urged against the validity of the election.
1st, It is insisted, that the Coroner had no authority to open and hold the election. The Act of 1859, chap. 9, repeals the provisions of the Code, requiring the election of Tax Collector by the County Court, and confers' the power upon the people of the County. The time prescribed for this election, is the same fixed by the Code for the election of Sheriffs, and it is governed by the same rules that regulate the election of other County officers. The Code, sec. 839, provides, that “the Sheriff, or, if he is a candidate, the Coroner, or, if there be no Coroner, some person appointed by the County Court, shall hold all popular elections; and said officer, or person, shall appoint a sufficient number of deputies to hold said election.”
There can be no doubt the election was held, at the proper time, and at the proper places, designated by law, except in the 10th District, where, it seems, it was impracticable to open the polls, for want of persons attend *39 ing at the election ground. The election was held on the first Saturday in March, 1866, and after, as the agreed facts declare, the usual and proper notices were up throughout the County. The number of notices which were given, do not appear, nor do we think it important that it should appear. The election was a general election, and the time and places of holding it, were fixed by public law, and all persons were bound to take notice of it; and no special advertisements, as in cases of special elections, in order to its validity, were required.
It was the Sheriff’s duty to have held the election, unless he was disqualified by law, from doing so. The Coroner applied to him, to ascertain whether he would hold the election or not, and he declined having any thing to do with it, and assigned, as the reason, that he had held one election, and got into difficulties about it, and the , next he held, he wuld have authority to do so from the Governor; and, besides, he Avould be a candidate for the office of Constable in his district, if Nash was not a candidate. Nash was not a candidate, and the Sheriff announced himself as a candidate, and was, as such, voted for by the people.
On either ground, we apprehend, there can be no reasonable doubt of the Coroner’s authority, to open and hold the election. No authority from the Governor, was necessary to authorize the election. The law was imperative, and it was necessary for the Sheriff to assume the responsibility imposed upon him by law, if any attached, and to open and hold the election, as prescribed by law. He could not defeat the election, by awaiting orders from the Governor to hold it. But he disqualified *40 himself by becoming a candidate, and thereby conferred the right and power, under the provisions of the Code above recited, upon the Coroner.
2d, But it is said, the Coroner was equally disqualfied, for the same reason. We do not think so. The record nowhere, except by implication, shows that he was a candidate. He assisted, it is true, in making out a ticket, upon which his name appears as a candidate for Trustee, which was circulated in the County; hut it does not appear that this was done before or after he ascertained from the Sheriff, that he would not hold the election, and would himself he a candidate. But be this as it may, he publicly, as well as in private conversation, a short time before the day of election, declared he was not a candidate, and would not accept any office if conferred upon him. He was not voted for at any place in the County, and not, therefore, within the reason of the Statute.
The object of the Statute, is to prevent all unfairness in the conduct of popular elections, and to secure to every voter entitled thereto, the free exercise of this privilege, without any influence exerted upon him, by those appointed to hold the election. How could it be said, that any improper influence, was exerted on the voters, in this case, when the Coroner was not, on the day of election, a candidate ? No one voted for him — none offered to do so. His name seems not, on the day of election, to have been before the people of the County, as a candidate, at all. No illegal votes, as shown by the record, were received, and none improperly rejected. The election was quiet, and conducted in a spirit of fairness throughout the County, and without complaint, in this re *41 spect, by any one. Under such circumstances, it would be a violent presumption, in the absence of all fraud, undue influence, or misconduct, in the deputies holding the election, to decide, that the mere fact, that the Coroner appointed the deputies, whether before or after he assisted in making up a ticket for County offices, upon which his name was placed as a candidate for Trustee, rendered the election null and void. Such a conclusion is absurd, and cannot be maintained by reason or authority.
3d, It is further insisted, that, as there was no election held in the 10th District, that the election, under the authority of the case of Marshall vs. Kearns, (2 Swan, 68,) was thereby vitiated and void.
The principle decided in that case, as explained in the case of the Louisville & Nashville Railroad Company vs. The County Court of Davidson County, et al., (1 Sneed, 637, 694,) not only does not support this proposition, but is conclusive against it. It does not appear, in this record, what the plaintiff’s majority was, nor does it appear, if all the voters who attended at the 10th Civil District, where the ballot-box was not opened, had cast their votes, either the one way or the other, that it would have changed the result. The mere fact, that the election was not holden at this precinct, is not sufficient to vitiate it— there must be something more. The general result of the contest, must be shown to have been affected by it; and the burthen of showing this, lies upon those who contest the general returns of the Sheriff, which must stand, and be regarded as sufficient evidence of the result, until the contrary is clearly made out by the contestant.
*42 4th, It is also insisted, that, inasmuch as the County Court failed to appoint the inspectors or judges of the election, that their appointment by the Coroner, without the advice of three Justices of the Peace, was unauthorized, and communicated no authority to them, to open and hold the election. There is nothing in this exception, nor is there anything in the one which immediately follows it — that the inspectors, or judges, at two of the voting places, were not sworn, under the Act of 1865, chap. 16, sec. 7. The Code provides, (sec. 842,) “If the County Court fail to make the appointment, or any person appointed, refuse to serve, the Sheriff, with the advice of three Justices, or, if none be present, three respectable freeholders, shall, before the beginning of the election, appoint said inspectors or judges.”
This provision of the Statute, we' apprehend, is merely directory; and whether the appointment is made by the County Court, the Sheriff, or Coroner, as the case may be, by and with the advice of three Justices, or an equal or less number of Justices or respectable freeholders, the result is the same. The object of the Statute, is to secure just and competent inspectors; and when that end is attained, without prejudice to the contestant, it constitutes no grounds for declaring the election void. Were the law held otherwise, and a strict conformity, in all respects to its letter, exacted of every officer holding popular elections, it would result in interminable contests about unsubstantial formalities, and end in a practical denial of the right of the people to choose their own officers. The same reason applies, with equal force, to the ob" *43 jection, that the judges, in some instances, were not sworn, according to the forms prescribed in the Act of 1865, chap. 16, sec. 7. The reason assigned in the agreed facts for this omission, is, that the officers holding the election, were not apprised of any change in the Statute. They seem to have had no disposition to violate the law; and, in every instance, when the proper oath was not administered, the inspectors • were otherwise sworn, according to the forms of law.
The oath prescribed in the Act of 1865, is an oath of loyalty and fidelity to the State, and the National Government. It was superinduced by the turbulence of the times, and intended to secure the civil administration of the State, in the hands of those friendly to its re-organization. The Act neither, in terms, or by implication, repeals the 844th section of the Code, prescribing the forms of an oath to be administered to the judges of elections. They are both compatible with each other, and may well stand together. The one seeks to secure the loyalty of the inspectors of elections, and the other a faithful discharge of the duties imposed upon them by law. The administration of both would have been proper, and, perhaps, under the Act of 1866, chap. 33, sec. 9, amendatory of the Act of 1865, indispensable. In the Act of 1866, the oath is declared to be, “An official oath to be taken and subscribed by all judges and clerks of all elections, and all deputies in any of the offices of the State or County;” while, in the Act of 1865, it is confined alone to the judges, and not, in terms, declared to constitute any part of the inspectors’ oath.
*44 But, whatever may be the difference in these two Acts, and however much more imperative the latter may be than the former, we think there can he but little doubt, that the irregularities in the qualification of the inspectors of the election, in this case, did not render the election of tjie complainant void. Their appointment was lawful, and their qualification regular, as far as it extended, and their action, in the conduct of the election itself, in conformity to law. No question as to their loyalty, either to the State or National Government, is raised, and the faithful discharge of their duties, is substantially admitted.
Under such circumstances, it would be going very far, indeed, to hold the election void, and defeat the popular will, for no other reason, than that the judge did not technically conform to the requirements of a Statute, which had only a short time before that, been published, and of the existence of which, it is admitted, they had no knowledge. Such strictness would lead to defeat, rather than uphold, popular elections, and cannot be maintained.
5th, It is further objected, that the officers holding the election, did not compare the polls at the Court-house, but counted the votes in a private house in the town in which the Court-house is situated. There is nothing in this exception. The Code, sec. 864, requires the officer, or person holding any election of County officers, to compare the polls at the Court-house. In this case, the agreed facts show, that the returns were made to the Court-house; but the County Court being in session, the votes were counted in a private house in the town. *45 This was a sufficient compliance with the requirements of the Statute, and constitutes no ground, in the absence of all fraud, or misconduct in comparing the polls, and counting the votes, for setting aside the election.
Other objections are taken, which are merely formal, and in no degree affect the validity of the plaintiff's election.
The judgment of the Circuit Court must be reversed, and a procedendo awarded to the County Court of Obion, commanding the Justices to induct the plaintiff into office.